**L.J., et al., Plaintiffs,**

v.

**Ruth MASSINGA, et al., Defendants.**

**Civ. A. No. JH–84–4409.**

United States District Court,
D. Maryland.

Dec. 12, 1991.

M. Gayle Hafner, The Legal Aid Bureau, Inc., Mitchell Y. Mirviss, Venable, Baetjer and Howard, Ward B. Coe, III, Lisa A. Kershner, Gary Posner, Whiteford, Taylor & Preston, Baltimore, Md., for plaintiffs.

J. Joseph Curran, Jr., Atty. Gen., Catherine M. Shultz and Wendy J. Greenberg,

Asst. Attys. Gen., Baltimore, Md., for defendants.

## MODIFICATION OF CONSENT DECREE

JOSEPH C. HOWARD, District Judge.

This modification of the Consent Decree approved by this Court on September 27, 1988, and effective August 6, 1988, 699 F.Supp. 508 (D.Md.) (hereinafter "the Consent Decree") is made and entered into by and between the remaining named plaintiffs and the certified class of persons whom plaintiffs represent, as set forth in the January 16, 1987, order of this Court, and all defendants.

WHEREAS, plaintiffs and defendants entered into the Consent Decree in an effort to avoid litigation and in the belief that settlement of the disputes between the parties was in the public interest;

WHEREAS, defendants have taken steps to implement the Consent Decree;

WHEREAS, plaintiffs assert, based in part on the assessments and report conducted pursuant to paragraphs 27 and 28 of the Consent Decree, that a modification of the Consent Decree is needed to provide further protections for those class members who are in the legal custody of the Baltimore City Department of Social Services and who are placed with relatives;

WHEREAS, under federal and State law, the first priority for an out-of-home placement is placement with a relative;

WHEREAS, defendants assert that, in general, it is in a child's best interest to place the child with a relative rather than in foster care;

WHEREAS, defendants assert that, in general, a child requiring an out-of-home placement, who is placed with a relative who knows the child well, needs less governmental intervention and services than a child placed with a foster parent previously unknown to the child;

WHEREAS, defendants assert that resources available to the defendants are limited and, therefore, that it is essential that those limited resources be used judiciously and for those children most in need;

WHEREAS, defendants assert that budgetary factors beyond defendants' control may impact on the initiatives undertaken pursuant to this agreement and may necessitate the revision or modification of the agreement;

WHEREAS, defendants assert that issues related to the care of children placed with relatives vary from jurisdiction to jurisdiction throughout the State;

WHEREAS, in an effort to avoid further litigation concerning children placed with relatives and without any admission of liability by any defendant for any purpose, plaintiffs and defendants believe that settlement of all disputes pertaining to those class members who are in the legal custody of Baltimore City Department of Social Services and who are placed with relatives and entry of this modification to the Consent Decree is in the public interest; and

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## MODIFICATION

1. The Consent Decree approved by this Court September 27, 1988, and effective August 6, 1988, is hereby modified by the addition of paragraphs 1–37 set forth herein. This modification settles and resolves all claims for declaratory relief and equitable relief, including injunctive relief, raised at any time during the pendency of this lawsuit pertaining to children who are in the legal custody of the Baltimore City Department of Social Services (hereinafter "DSS") and who are placed with relatives (hereinafter "children placed with relatives"), and all matters addressed in this modification of the Consent Decree, except as provided in paragraph 36 below.

2. A. The following paragraphs of the Consent Decree are hereby declared null, void and of no further effect: 25C, 26A, 27A and 28. The parties no longer have an obligation to comply with nor the right to demand compliance with the above-listed paragraphs, the provisions of which may

not be enforced by this or any other Court. However, nothing in this paragraph precludes either party from using the final report discussed in paragraph 28 of the Consent Decree, the assessments discussed in paragraph 27, or other relevant information derived from the above-listed paragraphs as part of the procedures outlined in paragraph 36 of this Modification.

2. B. The requirements of paragraph 27B of the Consent Decree are hereby declared null, void and of no further effect as provided in paragraph 2A above, except that caseworkers shall continue to be required to make reasonable efforts to facilitate the child's obtaining educational and medical services sufficient to address the unmet needs identified in the assessments conducted pursuant to paragraph 27 of the Consent Decree.

3. The following paragraphs of the Consent Decree are modified in part as described below:

(a) The data required by paragraphs 33(a), (c), and (k) shall begin to be collected for children placed with relatives after the execution of this Modification and shall be reported in the first court report filed thereafter. The data required to be collected by paragraphs 33($l$), (m) and (p) shall begin to be collected for children placed with relatives six months after the execution of this Modification and shall begin to be reported in the second court report after the execution of this Modification.

(b) The six-month report required by paragraph 33 shall be limited to reporting on the steps taken to achieve compliance with paragraphs 5, 7, 9, 13, 15A, 15B, 16, 17, 18, 19A, 19C, 21, 22, 25B and 33 of the Consent Decree and all paragraphs of this Modification. The sole reason for this modification is to reduce the defendants' burden of reporting.

(c) The initial health care screening required by paragraph 21B shall occur, if possible, prior to or at the time of placement, but in any event, not later than five working days following placement.

## PARTIES

4. The provisions of this Modification of Consent Decree shall apply to and be binding upon the parties to this civil action, and upon their employees, heirs, successors-in-interests and assigns.

5. The undersigned representatives of the plaintiffs and defendants certify that they are fully authorized subject to the Federal Rules of Civil Procedure to enter into and to execute the terms and conditions of this Modification of Consent Decree and to legally bind the parties, including all members of the certified plaintiff class.

6. The parties agree that the defendants' obligation to give notice of this Modification of Consent Decree to the plaintiff class is restricted to giving notice to their undersigned counsel by their signing and receipt of this Modification of Consent Decree, receipt of which is hereby acknowledged. In addition, defendants will send a notice of this Modification of Consent Decree to all relative caretakers, foster parents and parents of class members currently in DSS custody and to the organizations to which the notice of the Consent Decree was sent. The parties agree that the expense and delay of publishing this Modification of Consent Decree in area newspapers is not beneficial to the plaintiff class based on the experience of the parties prior to the entry of the Consent Decree. The parties agree to urge the Court to adopt a streamlined and inexpensive notice and approval process for this Modification of Consent Decree.

## ASSIGNMENT OF CASEWORKERS AND CASES

7. By September 30, 1991, caseworkers who serve children placed with relatives shall have average caseloads of no more than 30 children and maximum caseloads of no more than 33 children. These caseworkers also shall serve these children's caretakers and their biological families.

8. By September 30, 1991, the immediate supervisors of caseworkers who serve children placed with relatives shall have no

more than six caseworkers under their supervision.

9. Within three months after the execution of this Modification, the following standards for transfer and assignment of cases shall be applied to the cases of children placed with relatives:

(a) If a case involving a child placed with relatives is transferred from one DSS unit to another, it shall be assigned to a new caseworker within five working days from the date it was transferred from the previous worker. The transferring dictation shall include, among other things, a discussion of any unmet needs of the child, therapy and evaluations in progress, and existing service agreements. The new supervisor and new worker shall determine whether a discussion with the previous supervisor and/or worker is necessary after reviewing the case file, including the transferring dictation.

(b) The new worker shall receive the substantive casework material from the previous unit at the time the new case is assigned to the new worker.

(c) When a worker who serves children placed with relatives leaves DSS, is on extended leave that exceeds 30 days or transfers to a new unit, the supervisor shall assign that worker's cases to other workers within five working days. The supervisor may, based on the needs of the unit, retain a priority case or reassign it. Priority cases will include those in which a child requires a new placement; a child has medical needs or an imminent appointment; a child has a pending juvenile court or administrative review; or a child is the subject of a report of suspected abuse or neglect. There shall be a conference about the case between the supervisor and the new worker within ten working days of assignment. If possible, the former worker shall attend the conference.

## CREDENTIALS AND TRAINING OF CASEWORKERS

10. Defendants shall continue the current policy that no DSS caseworker without at least a B.S. or B.A. degree shall serve children placed with relatives.

11. All new caseworkers with limited or no prior training, who serve children placed with relatives, shall receive at least four days of orientation and training relating to the substantive aspects of the caseworker's responsibility within 60 days of a caseworker's assignment to serve children placed with relatives. Such training will include casework skills; interviewing; developing service agreements and case plans; permanency planning in principles and skills; working with families; AFDC procedures; SSI procedures and eligibility; EPSDT protocols; and the structure and law governing child welfare. Beginning three months after the execution of this Modification, caseworkers with prior training and caseworkers already assigned to the SEFC (Services to Extended Families With Children) unit shall receive training on the procedures and documentation of the SEFC unit and training in intra-familial dynamics and relationships if they have not already had such training.

12. Within one year after the execution of this Modification, all caseworkers serving children placed with relatives shall receive annually, after their first year of employment, twenty hours of training relating to the substantive aspects of the caseworker's responsibilities.

## SPECIALIZED SUPPORT UNIT

13. The specialized support unit established by the defendants in compliance with ¶ 8 of the Consent Decree shall be a resource for caseworkers and supervisors serving children placed with relatives. Workers and supervisors shall be notified promptly that this resource has been made available to them. All information distributed by this unit to foster care workers shall be distributed to caseworkers serving children placed with relatives.

## RELATIVE PLACEMENT FUNDING, SUPPORT, AND TRAINING

14. DSS shall assist relative caretakers, promptly and as needed, in obtaining those services that may be needed to assist their families, such as day care, aid to families

with dependent children, emergency assistance for families and children or medical assistance.

15. Within ten days of commitment to DSS of a child placed with a relative caretaker, a letter shall be sent to the relative caretaker listing the benefits of and requirements for licensure. The caseworker shall discuss the procedures for application as a restricted foster parent with the relative caretaker during the first home visit after commitment. Thereafter, relative caretakers may submit restricted foster home applications. However, if a child is placed with a relative caretaker following an order of shelter care and that relative caretaker is not AFDC eligible and cannot maintain the placement without financial assistance, the relative caretaker of that child may submit a restricted foster home application prior to commitment. Restrictive foster home applications shall be processed in a timely manner. Upon approval, retroactive foster care payments (less any AFDC payments received since application) shall be made from date of application. The provisions of this paragraph shall be implemented within three months after the execution of this Modification.

16. Defendants shall seek through the budget process funds for the purchase of special services to prevent the removal of children from relative placements, to promote reunification and/or to prevent a child's institutionalization.

17. Three months after the execution of this Modification, relative caretakers shall be informed on an annual basis of the availability and content of foster parent training and shall be invited to attend. Training for issues specific to the particular needs of these children shall be made available.

18. Caseworkers who serve children placed with relatives shall visit each child no less frequently than once a month for the first six months after placement. Thereafter, if in the caseworker's professional judgment no significant problems are present requiring monthly visits, the visits may take place every other month with a minimum of six visits a year.

## INFORMATION ON CHILDREN PLACED WITH RELATIVES

19. When a child is placed in a relative's home, DSS shall discuss with the relative caretaker information about the child, including the reason for the child's coming into care and the expected duration of the current placement and the expected permanent plan; medical, psychological or behavioral problems that the child may have, of which the worker has knowledge; and any ongoing treatment the child is receiving for any problems about which the worker has knowledge. If neither the caretaker nor child knows the child's school, recent grade in school and the name and address of the child's medical provider(s), the worker shall obtain that information. If an emergency placement is necessary, the above-described sharing and gathering of information shall occur within ten working days of placement. The information provided the caretaker shall be documented in the case record.

## PERMANENCY PLANNING

20. Except in emergency situations where a child faces a substantial risk of harm and where services cannot prevent the removal of a child, reasonable efforts will be made by the appropriate DSS personnel prior to placement of a child with a relative to prevent or eliminate the need for the removal of the child from his or her home. Such reasonable efforts to prevent or eliminate the need for placement or to reunify a child who has been placed shall include, where appropriate in the worker's professional judgment, the provision or securing of family counseling (including home-based) services, drug and alcohol abuse services, day care, parenting training, educational services, and assistance provided under the federal Emergency Assistance to Families with Children program to the extent allowed by law. Services and assistance shall be provided in the duration and intensity reasonably assured of meeting their goal.

21. Within three months after the execution of this Modification, each child

placed with a relative shall have a written case plan within sixty days of placement. The case plan shall conform to applicable federal law.

22. Within three months after the execution of this Modification, in each case in which the case plan is the child's return home, DSS shall enter into a service agreement with the biological parent of the child within sixty days of the child's placement unless the parent is unavailable or unwilling to agree. The agreement shall set forth current barriers to the child's return home, the steps the parent must take in order to have the child return home to him or her, the timelines for the completion of these steps, the services, if any, the caseworker and DSS will provide to the parent (for example, referral to alcohol abuse counseling), and the timelines within which any service will be provided. A copy of the service agreement shall be given to the parent and, upon request, to the child's attorney.

23. A visiting schedule between parents and their children, who are placed with relatives, shall be established in consultation with the parents, the caretaker and the child, if age appropriate. In all cases where the goal is return home, parents shall be informed that, unless it is determined not to be in the child's best interest, they are entitled to weekly visits. Where necessary, DSS shall assist visitation. If there is no visiting schedule, the reasons for not having a visiting schedule shall be documented in the case record.

24. Defendants shall continue to follow the guidelines on when a permanency plan shall be changed from return home. Such guidelines require that the case plan goal shall be changed promptly when the parent consistently fails to fulfill terms agreed to in the service agreement and/or when the parent has not maintained regular visitation or other contact with the child. The decision of DSS to change the permanency plan shall be reported promptly to the biological parents, their attorneys and the child's attorney.

25. A petition for termination of parental rights shall be filed on behalf of each child placed with relatives for whom the goal is adoption within 120 days of DSS establishing such a goal. After a petition is filed, DSS shall take such necessary steps within its power to expedite the termination of parental rights process.

## EDUCATION

26. Within three working days of being placed with a relative, a DSS worker shall determine whether a child of school age is enrolled in school, whether a pre-school age child who is diagnosed as developmentally delayed or educationally handicapped is enrolled in a special program to meet the diagnosed needs, whether school is in session and whether the school placement has been interrupted. If the relative caretaker has not enrolled such a school-age or pre-school child in school, the DSS worker shall assist the relative caretaker so that the child's enrollment in school is accomplished as soon as possible. The child shall be enrolled in school within five working days of placement unless this is unattainable for reasons outside of the control of DSS.

27. If the caseworker of a child placed with relatives has reason to believe that a child may be educationally handicapped and is not receiving special educational services, the worker shall assist, when necessary and appropriate, the relative in promptly notifying the local educational agency that the child may be educationally handicapped and in requesting a screening for that child in writing. If the caretaker is unable or unwilling to make this referral or if the referral is unsuccessful, the caseworker shall make or pursue the referral. Thereafter, the child's caseworker will provide to the school, when requested and to the extent allowed by law, all evaluations of the child contained in DSS files and the address of the biological parents, if it is not provided by the caretaker and is contained in DSS files. The worker will monitor whether the relative caretaker is attending meetings on behalf of the child placed in his or her care, is making and attending appointments for the evaluation of the child in his or her care and is requesting the appointment of a parent surrogate if the parents are unavail-

able or unwilling to participate in the special education process. If the caretaker is unable or unwilling to assume these responsibilities or if there are problems in the special education process, the caseworker shall take appropriate action.

28. The caseworker of a child placed with relatives shall monitor the child's progress in school. The caseworker shall encourage the relative caretaker to have contact with the child's school. If there is evidence of school problems, the worker shall consult with appropriate school personnel if in his or her professional judgment such consultation is appropriate. The caseworker shall document information obtained about the child's school progress in the case record.

29. By December 30, 1991, all caseworkers serving children placed with relatives shall have received training with respect to special education screening, evaluation, assessment and individualized education plan process. Thereafter, the worker shall notify the child's attorney if these services are not provided in a timely manner.

30. If DSS holds guardianship with the right to consent to adoption or long-term care short of adoption of a child placed with relatives and that child is educationally handicapped or is suspected of being educationally handicapped, the child's caseworker shall provide the local educational agency with the appropriate documentation of the child's legal status so that the school can apply for the appointment of a parent surrogate. If in the caseworker's professional judgment the relative caretaker would be an appropriate parent surrogate and the relative caretaker agrees, the worker shall include a recommendation that the relative caretaker be appointed the child's parent surrogate in the transmittal of the appropriate documentation of the child's legal status to the school.

### HEALTH CARE

31. Paragraphs 21A through 21E of the Consent Decree as modified by paragraph 3 of this Modification apply to children placed with relatives. The provisions of 21A, 21B and 21C as modified are effective July 1, 1991. *See also* Exhibit A.

### ADDITIONAL PROVISIONS

32. DSS shall provide for regular visitation among children placed with relatives and other siblings in the legal custody of DSS, except when such visitation is not in the best interests of one of the children.

33. A copy of the review form completed at or by the six-month administrative review required by paragraph 25B of the Consent Decree shall be available to the child's attorney.

34. DSS workers shall make reasonable efforts to obtain and maintain in the case files of children placed with relatives the results of the preplacement screening, the sixty-day assessment, any mental health evaluation, any hospital discharge summary and any other comprehensive assessment, particularly those pertaining to mental health, development or education.

### SCOPE AND APPLICATION OF THIS MODIFICATION

35. This Modification of Consent Decree shall apply only to those children certified as members of the plaintiff class, including all children placed with relatives. This Modification of Consent Decree creates no rights in favor of any other person and creates no obligations or duties on the part of defendants with respect to any programs other than DSS programs serving class members, including children placed with relatives. A violation of this Modification of Consent Decree shall not create a new, independent private cause of action for damages for anyone.

### FURTHER RELIEF

36. After September 30, 1992, plaintiffs may seek from this Court further modification of paragraph 7 above if: (i) the defendants are in substantial violation of any provision of this Modification or of any Consent Decree provision relating to children placed with relatives, because the caseloads established in paragraph 7 above resulted in defendants' inability to comply

with such provisions; (ii) plaintiffs have met with defendants and have presented information supporting their request for modification and have permitted defendants 30 days to respond; (iii) plaintiffs and defendants thereafter have attempted to resolve the dispute; (iv) plaintiffs have submitted the dispute to the court monitor pursuant to the Order of this Court dated May 16, 1989; and (v) plaintiffs have followed the procedures set forth in paragraphs 36A and 36B of the Consent Decree.

## ATTORNEYS' FEES

37. The parties agree that no attorneys' fees will be sought or paid for any work performed prior to the entry of this Modification of Consent Decree relating to the negotiation and settlement of any issues pertaining to children placed with relatives.

THE PLAINTIFFS, BY THEIR COUNSEL, AND THE DEFENDANTS BY SECRETARY COLVIN AND THEIR COUNSEL ENTER INTO THIS MODIFICATION OF THE CONSENT DECREE APPROVED SEPTEMBER 27, 1988 AND EFFECTIVE AUGUST 6, 1988, AND SUBMIT IT TO THE COURT THAT IT MAY BE APPROVED AND ENTERED AS AN ORDER OF COURT.